1   DAVID L. ANDERSON (CABN 149604)
    United States Attorney

2
    HALLIE HOFFMAN (CABN 210020)
3   Chief, Criminal Division

4   JONATHAN U. LEE (CABN 148792)
    Assistant United States Attorney
5
        1301 Clay Street, Suite 340S
6       Oakland, California 94612
        Telephone: (510) 637-3680
7       FAX: (510) 637-3724
        Jonathan.Lee@usdoj.gov
8
    Attorneys for United States of America
9

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                    OAKLAND DIVISION

13

14  UNITED STATES OF AMERICA,          )   NO. CR 20-120 HSG
                                       )
15        Plaintiff,                   )   **UNITED STATES' SENTENCING
                                       )   MEMORANDUM**
16     v.                              )
                                       )
17  DANIEL ANDRES SCALLION-MARTINEZ,   )
                                       )
18        Defendant.                   )
                                       )

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

Defendant Daniel Andres Scallion-Martinez ("defendant") is scheduled to plead guilty and be sentenced on the charge of being a felon in possession of ammunition. Arrested on January 14, 2020, while on state parole, defendant possessed a semi-automatic handgun with a 28-round magazine, loaded with nine (9) rounds of .40 caliber ammunition. Defendant is charged with possession of the ammunition because the handgun was an untraceable "ghost" gun. This was not defendant's first firearms-related offense. He was sentenced to four years in California state prison for an assault with a firearm on a person in 2016. Defendant has been a Sureño member since his youth, following his family's decision to send him to live in Mexico at age 12. As discussed further below, the history and characteristics of the defendant, the need to address the seriousness of the criminal conduct, protect the public from further crimes of the defendant, and afford adequate deterrence weigh in favor of imposing a sentence of 36 months of imprisonment and three years of supervised release.

## II.     FACTUAL BACKGROUND

### A.     Defendant's Offense Conduct

While on parole following a four-year California prison sentence for committing a crime of violence, defendant was arrested on January 14, 2020 in possession of a loaded firearm. Police officers responding to a phone tip approached a parked vehicle at a scenic overlook in San Pablo, California. Defendant was a passenger in that vehicle. As one officer spoke to the driver, who was a female known to defendant, another officer approached the front passenger area of the vehicle. The officer observed the firearm which was positioned on the floorboard under defendant's legs. The handgun was upside down, with the handle and grip closest to defendant's reach and grasp. The officers' body worn camera video recorded their interaction. Defendant is seen in the video leaning forward and reaching down in the general direction of the firearm. Officers commanded him to stop, which he did, and he was then taken into custody. The firearm is a so-called "ghost" gun because it did not have manufacturer's logos, marks or serial number information. Attached to the firearm was an extended magazine, which was loaded with nine rounds of .40 caliber ammunition. The ammunition was manufactured outside of California.

**B.      Defendant's Criminal History**

Mr. Scallion-Martinez has three prior convictions, two of which are for felony offenses. In 2017, he was convicted in Marin County Superior Court of violating California Penal Code section 245(a)(2), which prohibits assault with a firearm on a person. He received a sentence of four years in prison. PSR ¶ 28. After his conviction, but before he left Marin County's custody for state prison, Mr. Scallion-Martinez was charged with felony possession of a weapon while in prison. He received a sentence of one year in prison. PSR ¶ 29. In 2018, defendant was convicted of violating California Penal Code section 25400(a)(1) for having a concealed firearm in a vehicle at the time of his arrest in 2015. He received a sentence of 150 days in jail for this misdemeanor offense. PSR ¶ 27. When he was arrested on this instant offense, defendant was on parole. PSR ¶ 28. His parole term is scheduled to end on December 1, 2021. *See* PSR ¶ 29.

| Date of Conviction | Charge / Jurisdiction | Sentence | Criminal History Points |
|---|---|---|---|
| 8/22/2018 | Cal. Penal Code 25400(a)(1) Concealed Firearm in a Vehicle  Contra Costa Superior Court | Misdemeanor 150 days jail | 2 |
| 1/26/2017 | Cal. Penal Code 245(a)(2) Assault with Firearm on Person  Marin County Superior Court | Felony 4 years prison | 3 |
| 1/31/2017 | Cal. Penal Code 4502(a) Prisoner in Possession of Weapon  Marin County Superior Court | Felony 1 year prison | 2 |
|  |  | Committed Offense while on parole | 2 |
|  |  |  | Total = 9 CHC is IV |

**C.      Procedural History**

On February 20, 2020, the U.S. Attorney's Office filed the criminal complaint initiating this prosecution. Dkt. No. 1. Defendant made his initial appearance on February 28, 2020. Dkt. No. 5. The United States moved to detain, and defendant waived findings and a detention hearing. *Id*. The Grand

Jury returned a single count Indictment on March 5, 2020, charging defendant with violating 18 U.S.C. § 922(g)(1). Dkt. No. 11. Defendant moved for release from custody in April 2020, and Magistrate Judge Hixson denied the motion on April 13, 2020. Dkt. No. 19. The Court issued a detention order on April 14, 2020. Dkt. No. 20. Defendant filed a motion to suppress on June 15, 2020, which the Court denied by order dated September 3, 2020, after briefing and argument. Dkt. Nos. 28-40.

The Court set a status conference for October 19, 2020, which was vacated after the parties filed a stipulation and proposed order to set this combined change of plea and sentencing hearing. Dkt. No. 48. The parties submitted the proposed plea agreement by e-mail to chambers on October 23, 2020.

## III.    PENALTIES

### A.    Statutory Penalty Range

The government agrees with the statutory penalties set forth in the Presentence Report. PSR ¶¶ 63, 65. The maximum penalties for a violation of 18 U.S.C. § 922(g)(1) are ten years of imprisonment and three years of supervised release.

### B.    Guidelines Range

The United States agrees with the Probation Department's calculations at PSR ¶¶ 15-24.

| | | |
|---|---|---:|
| a. | Base Offense Level, U.S.S.G. § 2K2.1(a)(3): | 22 |
| | Acceptance of Responsibility (§ 3E1.1) | -3 |
| | Total Offense Level | 19 |

## IV.    LEGAL AUTHORITY

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id*. The Sentencing Guidelines are "the 'starting point and the initial benchmark,'" *United States v. Kimbrough*, 552 U.S. 85, 108 (2007) (quoting *United States v. Gall*, 552 U.S. 38, 49 (2007)), and are to be kept in mind throughout the process. *See Gall*, 552 U.S. at 50, n. 6. As noted by the Ninth Circuit, the Supreme Court has "clarified that we may attach a presumption of reasonableness to sentences falling within the

Guidelines range." *United States v. Saeturn*, 504 F.3d 1175, 1178 (9th Cir. 2007). After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for defendant, the Court should consider these factors, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need for the sentence imposed to protect the public from further crimes of the defendant;

(5) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

## V. SENTENCING RECOMMENDATION

### A. A 36-month sentence is appropriate

The Sentencing Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice." *Rita v. United States*, 551 U.S. 338, 350 (2007). Taking those 18 U.S.C. § 3553 factors into account, a term of imprisonment of 36 months is an appropriate and just sentence in this case, balancing the defendant's history and characteristics, the seriousness of the offense conduct, defendant's respect for the law, the just punishment, the need to protect the community from defendant's conduct, and deterrence.

#### 1. History and characteristics of the defendant

Defendant is a 25-year old resident of San Pablo, California. Born in Nevada, defendant spent

most of his childhood in the San Francisco Bay Area. Although he was close to both of his parents, they argued with each other and later divorced. Defendant split his time between his parents, who continued to live in the same apartment building which made defendant's transition between their households somewhat easier. Defendant began to act out in school, counselors brought his behavior to his parents' attention, and out of frustration with his behavior, defendant's family sent him at age 12 to live in Mexico with relatives. He remained in Mexico for approximately 5-6 years, during which time he joined the Barrio Evil Sureños. PSR ¶¶ 43-44. Defendant returned to the Bay Area in 2013, unsuccessfully pursued his GED, married and later divorced, and became a father. PSR ¶¶ 45-46.

During the years since his return to the Bay Area from Mexico, Mr. Scallion-Martinez has continued to be in the Sureños. In 2016, for example, he got into an argument over graffiti in San Rafael, California. PSR ¶ 28. The graffiti in question was on a wall known for graffiti of both Norteño and Sureño gangs. *Id*. The argument turned into a dispute with four individuals vandalizing defendant's car and chasing and possibly punching him. *Id*. Mr. Scallion-Martinez pulled a gun and fired at the men as they ran off, striking one. *Id*. Investigators found gang-related items in defendant's bedroom when they executed a search warrant. *Id*. While in custody for this conduct, defendant sustained another felony for possession of a weapon in his cell. PSR ¶ 29. Defendant was sentenced to four years in state prison for these two felony offenses. He was paroled in December 2018. *Id*. Less than a year later, after his arrest in San Pablo in January 2020, officers found gang-relating writings with Mr. Scallion-Martinez's name on them in the vehicle, and he admitted to being a Sureño and carrying the firearm for his protection. PSR ¶¶ 9-10.

Defendant's history is also notable for a diagnosis of depression in 2016 while in Marin County Jail and for tuberculosis while in San Quentin. PSR ¶¶ 51-52. He was diagnosed with Post Traumatic Stress Disorder while at San Quentin. PSR ¶ 52. He is not currently taking medications for either diagnosis. Defendant's substance abuse history includes methamphetamine, cocaine, Xanax, and marijuana, with the latter being his drug of choice. PSR ¶¶ 54-55. Finally, Mr. Scallion-Martinez is engaged to be married. PSR ¶ 47.

## 2. Seriousness of the conduct, respect for the law, just punishment

The conduct here is serious. While on parole, defendant possessed a loaded firearm with an attached high capacity magazine. He positioned the gun on the floorboard of the parked vehicle between his legs and within his reach. He later stated he carried the firearm for protection, indicating an awareness on his part of the possible need to use the firearm.

Defendant's conduct shows a lack of respect for the law. He knew he was prohibited from possessing loaded firearms, both by the terms of his parole and from his prior firearms-related convictions in 2015 and 2016.

Defendant knew his conduct was unlawful and dangerous. The recommended sentence will result in his longest[1] term of incarceration, and it will be his first federal sentence and therefore his initial exposure to the programming available in BOP custody, where he can complete his GED and obtain vocational training, among other options. The recommended sentence will provide a just punishment.

## 3. The need to protect the community

The offense conduct in this case endangered the community. A concealed firearm in a vehicle creates a risk of danger to those who are inside or within close proximity of the vehicle, including passersby and other motorists. In this case, the firearm was close at hand for the defendant, not secured in the trunk or other location within the vehicle. Whenever a vehicle is in transit with an armed occupant, the risk of harm to others is dynamic. The recommended sentence will protect the community.

## 4. The need for deterrence

Mr. Scallion-Martinez's history includes multiple firearms-related offenses. In the 2016 San Rafael incident, as noted elsewhere, he fired shots at four men with whom he had a disagreement over graffiti. As he walked away from that scene, while crossing in front of another vehicle in an active lane

---

[1] Regarding the San Rafael shooting incident, defendant was arrested on April 25, 2016. PSR ¶ 28. He entered California Department of Corrections custody on January 31, 2017. PSR ¶ 29. He was paroled 22 months later on December 2, 2018. *Id*. His total time in custody was approximately 30 months.

of traffic, defendant pointed the firearm at the motorist, who had no connection to the dispute. In 2015, defendant sustained a misdemeanor conviction for possession of a concealed firearm in a vehicle. In this offense, Mr. Scallion-Martinez' firearms-related possession occurred while he was on parole. This history indicates that to date, Mr. Scallion-Martinez has not been deterred from possession of firearms and ammunition. The recommended sentence reflects the need for specific deterrence.

As a result of the foregoing discussion, the government recommends a downward variance in this case. Defendant's history and characteristics include experiences that support the requested downward variance. At a young age, defendant's family sent him to Mexico to live with relatives. While there, he joined the Sureños. This has had severe consequences for defendant. Most if not all of his criminal history appears to trace back to his gang membership. Given his young age at the time his family sent him to live in Mexico, a decision made about but not by defendant, this part of defendant's history supports the recommended sentence. Even so, given the discussion of the other factors above, the recommended sentence will result in defendant's longest term of incarceration to date.

**B.      Supervised Release**

The government requests that the Court sentence the defendant to a term of three years of supervised release. The government also respectfully requests that the Court impose the suspicionless search condition in the plea agreement as part of the sentence. The offense conduct and defendant's criminal history both amply demonstrate the need for this condition upon defendant's release. Finally, the government believes conditions prohibiting or restricting defendant from membership or association with the Sureño gang are appropriate. The conditions described on page 4 of the PSR's Sentencing Recommendation address defendant's membership and association in the Barrio Evil Sureño gang. The government believes it would be appropriate to expand the restriction to other sets or subsets of the Sureños.

**C.      Forfeiture**

The government respectfully requests that the Court enter an order of forfeiture of items listed in the indictment – namely, a) Nine (9) rounds of .40 caliber ammunition; and b) Semi-automatic handgun with 28-round magazine, described on page 6 of the PSR's Sentencing Recommendation.

## VI.    CONCLUSION

Under the applicable provisions of the Sentencing Guidelines and the factors of 18 U.S.C. § 3553(a) as applied to this defendant and this criminal conduct, the government requests that the Court impose a sentence of 36 months of imprisonment and three years of supervised release. This request is a downward variance based on the 3553(a) factors, in particular the defendant's personal history and characteristics. The government also requests that the Court impose the special condition of supervised release authorizing the suspicionless search of defendant's person, residence, office, vehicle, electronic devices and their data, and any property under defendant's control, as well as appropriate conditions prohibiting or restricting gang membership or association.

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

Dated: January 6, 2021

_____/s/_____
JONATHAN U. LEE
Assistant United States Attorney
Attorney for the UNITED STATES OF AMERICA